UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANA NICHOLS, 100 EVERGREEN HILL RD., FAIRFIELD, CT, 06824,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE COPORATION, A RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Defendant. | Case No. C14-1796RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment.[1] Dkt. #56. Defendant argues that all of Plaintiff's claims arising out of a prior loan with Washington Mutual Bank should be dismissed as a matter of law. *Id.* Pro Se Plaintiff opposes the motion, asserting that there are genuine disputes as to the material facts of this case, and therefore judgment as a matter of law is not appropriate. Dkt. #58. Oral argument was held on April 28, 2017. Dkt. #70. The parties held a mediation soon thereafter. However, the matter did not resolve. Dkt. #74.

---

[1] Defendant has since filed Motions In Limine, and Plaintiff has filed a Motion to Supplement the Record and an Emergency Motion to Strike the Trial Date and Allow Plaintiff to Join Additional Parties. Dkts. #68, #73 and #75. The Court also resolves those motions herein.

ORDER
PAGE - 1

As the Undersigned stated during oral argument, the courts of this District are all too familiar with the failure of Washington Mutual Bank, and the devastating effect it had on vulnerable home owners who were victims of its questionable loan practices. *See* Dkt. #71 at 22:7-13. Plaintiff alleges that she is one such victim. Without reaching the same conclusion, the Court does acknowledge that Plaintiff has suffered a number of personal hardships over the last decade, which impacted her financially and motivated her to enter into certain agreements and loans. While the Court is sympathetic to Plaintiff's situation, it is also constrained by the law in resolving the issues now before it. Accordingly, for the reasons discussed herein, the Court GRANTS Defendant's motion and dismisses Plaintiff's claims.

## II. BACKGROUND

On November 22, 2014, *pro se* Plaintiff, Diana Nichols, filed a Complaint against Defendant Federal Deposit Insurance Corporation ("FDIC") as Receiver for now-defunct Washington Mutual Bank ("WaMu"), alleging, *inter alia*, breach of contract, negligence, fair lending violations and fraud. Dkt. #1. Plaintiff served the FDIC in Washington, D.C., in March of 2015. Dkts. #3 and #4, Ex. 1. According to Plaintiff, in April of 2015 she received a letter via e-mail from an attorney at the law firm Miller, Nash, Graham and Dunn, stating that she represented the FDIC in the instant suit and admonishing Plaintiff for improperly performing service. Dkt. #4 at 3. However, that attorney had not appeared in this Court on behalf of Defendant at that time. As a result, Plaintiff moved for default judgment against Defendant, which the Court denied on the basis that Plaintiff had not completed service. Dkt. #15. Plaintiff apparently completed service at some point thereafter, and Defendant appeared in this case and filed an Answer to the Complaint. *See* Dkts. #12, #13, #14, #16, #17, #18, #19 and #20.

Plaintiff is a resident of the State of Connecticut who entered into a home mortgage loan with WaMu in July of 2005. Dkts. #1 at ¶ 1 and #57-1 at 7:19-21. She alleges that the loan was misrepresented to her both as to the nature and to the material terms of the loan. Dkts. #1 at ¶ 13 and #58 at 2-5. She alleges that these misrepresentations effectively increase the amount of her loan principle over time, because the loan has been structured such that her monthly payment never fully covers the interest being generated on the loan. *Id.* at ¶¶ 16-29. In other words, Plaintiff entered into a negatively amortizing loan.[2] Plaintiff alleges that, as a result, she will never fully pay off the loan.[3] Dkt. #1 at ¶¶ 16-29. Plaintiff also alleges that she was coerced into consummating this loan at a particularly vulnerable time in her life, of which the loan officer was aware. *Id.* at ¶ 43. and Dkt. #58 at 2-5.

Defendant admits that Plaintiff entered into a home loan with WaMu on or about July 13, 2005. Dkt. #20 at ¶¶ 1 and 12. Defendant also admits that on September 25, 2008, the Director of the Office of Thrift Supervision closed WaMu and appointed the FDIC as Receiver. *Id* at ¶ 3.

After WAMU closed, JPMorgan Chase Bank, N.A. ("Chase"), became the subsequent servicer of Plaintiff's loan. Dkts. #1 at ¶ 60 and #56 at 5, fn. 21. In January 2012, Plaintiff requested a modification of her loan under the Making Home Affordable Program. Dkt. #57-1 at 174:-177:24 and Ex. 28 thereto. In June 2012, Chase informed Plaintiff that it had reviewed her request for a loan modification and proposed a Loan Modification Agreement. *Id*. at 178:18-179:6 and Ex. 29 thereto. In July 2012, Plaintiff and Chase entered into a Loan Modification

---

[2] Neither party disputes that Plaintiff's loan had a negative amortization component. Dkt. #63 at 3.

[3] As further referenced below, Plaintiff makes these allegations despite the fact that she has since entered into a Loan Modification agreement with the current loan servicer which does not contain an adjustable rate, and therefore is no longer negatively amortizing. *See* Dkt. #57-1 at 174:-177:24, 178:18-179:6, and 182:8-183:25 and 187:7-23, and Exs. 28-31 thereto.

ORDER
PAGE - 3

Agreement, modifying the loan originally made by WAMU. *Id.* at 182:8-183:25 and 187:7-23 and Exs. 30 and 31 thereto. According to Plaintiff, she has since defaulted on the modified payment agreement, but admits that it is still "technically" in place. Dkt. #71 at 5:4-6. The record indicates that payments on the loan modification ceased in February 2013.[4] Dkt. #69-1, Ex. B at DIANAN6000006.

In June and July of 2014, Plaintiff apparently sought to file a late claim with the FDIC-Receiver. Dkt. #1 at ¶¶ 5-6. On July 23, 2014, Plaintiff received a letter stating that the FDIC had accepted her claim under the late-filed claims exception. *Id.* at ¶ 7. On September 25, 2014, Plaintiff received a letter stating that her claim had been disallowed, and that she could file a lawsuit within 60 days of receiving the letter. *Id.* at ¶ 8. The instant lawsuit followed. Plaintiff alleges the following claims for relief, all in relation to the original WaMu Note and Mortgage (which was a cashout refinance of a prior loan): 1) breach of contract and the covenant of good faith and fair dealing; 2) negligence; 3) violation of TILA and Regulation Z; 4) Unconscionability; 5) unjust enrichment; 6) fraud in the factum; and 7) duress. Dkts. #1 at ¶¶ 64-121 and #57-1, Exs. 19-20. It appears that Plaintiff seeks monetary damages and an Order declaring the original Note & Mortgage to be Null & Void. *See* Dkt. #1 at ¶¶ 70-72, 80, 96, 110, 113 and 121.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on

---

[4] Although not entirely clear in the record, it appears that Plaintiff's loan, as modified, is now being serviced by Select Portfolio Servicing ("SPS"). Dkt. #69-1, Ex. C.

ORDER
PAGE - 4

summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Motion to Accept Untimely Arguments**

As an initial matter, Plaintiff has moved the Court to "allow and accept Plaintiff to submit additional argument in opposition to Defendant's motion for summary judgment." Dkt. #73. Plaintiff argues that because she became emotional during oral argument, she was unable to answer the Court's questions effectively or present her points in opposition to summary judgment. *Id.* She asserts that after reviewing the transcript of the oral argument in this matter, she prepared additional responses she would like the Court to hear. *Id.* The Court DENIES the motion. The Court appreciates that Plaintiff is proceeding *pro se* in this matter; however, Plaintiff was provided an opportunity to argue her opposition to the Court, and the Court needs no further argument to analyze the record or address the legal issues in this matter. Moreover, some of the arguments Plaintiff now desires to present are simply duplicative of those already contained in

her initial brief in opposition to summary judgment, and the remainder are not supported by any additional Declarations or other evidence in the record. For these reasons, the Court will not consider Plaintiff's supplemental arguments. Accordingly, the Court now turns to the merits of this case.

### C. Loan Modification and Implied Waiver

The Court first examines the effect of Plaintiff's Loan Modification on her claims.[5] Each of Plaintiff's claims in this matter relates to conduct pertaining to the original loan WaMu loan. *See* Dkt. #1. Nowhere in her Complaint does Plaintiff make any assertions with respect to the validity of the subsequent Loan Modification agreement between her and Chase. Indeed, although she entered into the agreement more than two years prior to filing her suit, she alleges in this suit that "every month she makes a payment" effectively less that what could cover the interest on the loan, and that results in a loan she can never pay off. *See id.* at ¶ 21. These allegations are stated in the present tense, thus purporting to be true at the time she filed her Complaint. However, after the July 13, 2012, Loan Modification her payments were governed by new terms. Dkt. #57-3 at 59. The new payments began August 1, 2012, in a lower amount and at a fixed interest rate. *Id.* at 47-61. Plaintiff acknowledges that she entered into such modification agreement. Dkts. #57-1 at 182:8-183:25 and 187:7-23 and Exs. 30 and 31 thereto and #71 at 5:4-7.

---

[5] The Court has noted its disappointment that Plaintiff's Complaint failed to mention she had entered into a Loan Modification agreement two years prior to bringing her lawsuit, and has alleged claims based on loan terms that apparently no longer exist. *See* Dkts. #1 and #. Because of Plaintiff's failure to set forth the existence of the Loan Modification in her Complaint, the FDIC-Receiver had no knowledge of the agreement until two years after this case was filed on September of 2016. Dkt. #64 at ¶ ¶ 3-4. This lack of information precluded the parties and the Court from addressing this important issue earlier in this case, which may have preserved numerous resources.

ORDER
PAGE - 6

Plaintiff benefitted from the modification. The agreement reduced interest rates and the monthly payments. Dkt. #57-3 at 51 and 54. In exchange for those modifications, Plaintiff agreed, *inter alia*, that she was not a party to any litigation (which was true at the time) involving the Loan Documents (defined as the WaMu Note and Mortgage now at issues in this case), to pay the amounts she owed under the agreement, and specifically warranted that the original Loan Documents "are composed of **valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed**." Dkt. #57-3 at 53-55 (emphasis added). She further agreed that all terms and provisions in the Loan Documents remained in full force and effect, except as modified by the Loan Modification agreement. *Id.* at 55. There is no evidence in this record demonstrating, or even suggesting, that these terms have not been fulfilled by either her or Chase. Further, Plaintiff's Complaint neither addresses, nor calls into question, the validity of the agreement, and Chase is not a party to this lawsuit.[6] *See* Dkt. #1. As a result, the Loan Modification agreement appears to be a binding contract.

Under similar circumstances, at least one other court in the Ninth Circuit has found that a plaintiff waives his or her causes of action on the original Note and Mortgage when those documents are reaffirmed by a subsequent loan modification. *See*, *e.g.*, *Merritt v. Countrywide Fin. Corp.*, 2015 U.S. Dist. LEXIS 125284, *82 (N.D. Cal. Sept. 17, 2015) (explaining that the plaintiffs had impliedly waived their fraud-based claims against the Countrywide defendants by signing a subsequent loan modification); *see also Quinto v. JP Morgan Chase Bank*, 2011 U.S.

---

[6] Plaintiff attempts to explain why she failed to include information about her loan modification in her now-pending motion to join additional parties. Dkt. #75. That motion is addressed below.

ORDER
PAGE - 7

Dist. LEXIS 21149, *6-8 (N.D. Cal. Mar 2, 2011). While not binding on this Court, the Court believes these cases demonstrate a logical approach to situations such as the instant one.[7]

The Court does recognize that courts in other jurisdictions have held that TILA rights cannot be waived by subsequent agreements because those rights can only be waived in very narrow circumstances. For example, in *Mills v. Home Equity Group, Inc.*, 871 F. Supp. 1482 (D.D.C. 1994), the plaintiff entered into a loan agreement which was secured by a deed of trust on her residence. *Id.* at 1484. After failing to meet her monthly payment obligations, the plaintiff, who was represented by pro bono counsel, entered into a purported settlement agreement which restructured the loan and included a release of any potential TILA claims she "had, have or might have against Lender arising out of or relating to the Original Loan documents[.]" *Id.* The plaintiff later defaulted on the restructured loan and foreclosure proceedings ensued. *Id.* The plaintiff then sent the defendants a notice of rescission, which was within the three-year period for rescinding the loan. *Id.* In response to the defendants' assertion that Plaintiff's right to rescission had been waived, the court held that the waiver was ineffectual because the right to rescind cannot be released or waived absent the narrowly drawn circumstances found in TILA for such waiver, and those had not been met. *Id.* at 1486. Relying on *Mills*, the United States District Court for the District of Oregon also found that the plaintiff could not waiver her TILA rescission rights in a subsequent agreement. *Bakker v. Wells Fargo Home Mortg.*, 2012 U.S. Dist. LEXIS 151055, *9-12 (D. Or. June 26, 2012).

However, the instant matter presents circumstance which are factually distinguishable from *Mills* and *Bakker*. Indeed, as Defendant notes, Ms. Nichols' right to rescind the WaMu

---

[7] To find otherwise would undermine the incentive for those entities that have acquired questionable loans to assist consumers with terms that will ultimately allow them to stay in their homes.

ORDER
PAGE - 8

loan expired in 2008, and neither *Mills n*or *Bakker* addresses the ability to waive the right to rescind after the right has already expired. In fact, in *In re Divittorio*, 670 F.3d 273 (1st Cir. 2012), the First Circuit Court of Appeals addressed the situation where a plaintiff attempted to rescind the transaction more than six years after the consummation of the transaction and was not seeking to invoke his TILA right of rescission within the three-year statute of limitations. *DiVittorio*, 670 F.3d at 285-86. Because the plaintiff's right of rescission under TILA had long expired, the court determined that "his ability to waive any rescission right was not cabined by the requirements of" TILA or its regulations. *Id.* at 285. The First Circuit distinguished *Mills* on that ground. *Id.* n.9. With respect to the plaintiff's argument that recognizing his waiver would thwart TILA's policies, the First Circuit observed that circumstances suggested that his waiver was knowing and voluntary. *Id.* at 286-88. As further discussed below, there is no admissible evidence before this Court on which the Court could question Plaintiff's knowing and voluntary entry into the Loan Modification with Chase. Thus, the Court finds that by entering into a Loan Modification in 2012, in which Plaintiff reaffirmed the validity of those documents, she impliedly waived any subsequent claims related to the WaMu loan documents. *See In re Welfare of S.V.B.*, 75 Wn. App. 762, 770, 880 P.2d 80 (1994) ("the claimed act of waiver must be inconsistent with any other intent as intent will not be inferred from 'doubtful or ambiguous factors.'" (citing *Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980)).

Plaintiff argues that Defendant may not rely on the Loan Modification and reaffirmation contained therein because Defendant never raised reaffirmation as an affirmative defense, and has therefore waived such a defense. Dkt. #58 at 6-8. However, reliance on the loan modification is not one of the required defenses enumerated in Federal Rule of Civil Procedure 8(c), and is therefore not waived under Rule 12(h). Moreover, nothing precludes Defendant from relying on

ORDER
PAGE - 9

facts learned through discovery to refute Plaintiff's claims. Further, to the extent Plaintiff asserts she was prejudiced by Defendant's reliance on the Loan Modification, Plaintiff fails to demonstrate such prejudice when she herself has been aware of the modification and the circumstances surrounding agreement since long before she filed her Complaint.

Finally, Plaintiff suggests that the Loan Modification is also void because she lacked capacity to enter into the agreement due to her suffering a brain aneurysm just months prior to signing the agreement. Dkt. #58 at 8-9. Plaintiff asserts that this creates a genuine issue of material fact precluding summary judgment. *Id.* Plaintiff is incorrect. Plaintiff has not put the Loan Modification agreement at issue in this matter. Indeed, as noted herein, she failed to allege the very existence of the agreement in her Complaint. Moreover, she has failed to support her assertions with any admissible evidence. She does not produce any medical records evidencing that she suffered a brain aneurysm, when she suffered it, and what affect it may have had on her capacity to enter into contracts. She does not offer any affidavit or declaration from herself or others discussing her ability or inability to enter into contracts in July of 2012. *See* Dkt. #58. While she has since offered evidence that she had subsequent disputes with Chase related to the loan modification, the context and results of those disputes have not been made clear in the record. *See* Dkt. #69-1. Likewise, she has not offered any evidence at all with regard to Chase and the formation of the Loan Modification agreement at the time it took place in 2012. Significantly, she does not refute the authenticity of the Loan Modification documents or the terms of those documents. As a result, she fails to demonstrate that there are any genuine issues of material fact in dispute. *See Bias v. Moynihan*, 508 F.3d 1212, 1218-19 (9th Cir. 2007) (granting summary judgment against *pro se* plaintiff for the failure to support an opposition with evidence).

For all of these reasons, the Court finds that the reaffirmation of the WaMu Note and Mortgage precludes Plaintiff's claims. Accordingly, they will all be dismissed.

**D. Motion to Join Additional Parties**

Plaintiff has filed an "emergency" motion for "entry of an Order: (1) adjourning the bench trial currently scheduled for May 22, 2017; (2) granting Plaintiff leave to join JPMorgan Chase Bank, N.A. ("Chase") and Deutsche Bank National Trust Co. ("Deutsche") as party-defendants in this action; and (3) granting Plaintiff related relief, including leave to amend her complaint to assert claims for, inter alia, declaratory judgment against Chase and Deutsche consistent with the relief sought by Plaintiff in her initial complaint in this case filed on November 22, 2014." Dkt. #75. Plaintiff argues that at the inception of her case, Defendant took the position that this case is a "two-party dispute," not requiring the addition of subsequent holders/servicers of Plaintiff's mortgage, Chase and Deutsche, even though Plaintiff sought judgment that her mortgage is void or void *ab initio*. Dkt. #75 at 2. Plaintiff further argues that it was not until moving for summary judgment that Defendant asserted for the first time that Plaintiff's claims must be dismissed because Chase and Deutsche had not been joined, and that it was not until mediation on May 9, 2017, that she understood this Court might dismiss all of her claims because she had failed to join those to parties. *Id.* As further discussed below, Plaintiff misconstrues the briefs to which she cites.

The parties filed a Joint Status Report ("JSR") in this matter on November 2, 2015. Dkt. #25. In setting forth the "complexity" of the case, the parties disagreed. Defendant stated that the case was not complex, as it was a "two-party dispute," meaning that there was one plaintiff and one named defendant. Dkt. #25 at 3. Nowhere did Defendant assert that the matter was limited to only two parties, or that it took a position that no parties could be joined. *See id.* On

the other hand, Plaintiff took the position that the matter was complex, because it was not clear who owned her mortgage loan. *Id.* at 1-3. However, in discussing the ownership issue, she never acknowledged that she had entered into a loan modification with Chase. *See id.*

With respect to joinder, Plaintiff asserted that she should have no deadline for the joinder of Chase and Deutsche banks, because whether they were real parties in interest needed to be determined. *Id.* at 3. Defendant stated that it did not intend to join any additional parties, and asked for a firm joinder deadline. Dkt. #25 at 3. Again, nowhere did Defendant assert that Plaintiff could not or should not join additional parties.

After reviewing the parties' JSR, the Court issued a Scheduling Order on November 4, 2015, and set various pre-trial deadlines, all of which have now passed except for the pre-trial conference, pre-trial order, trial briefs, and proposed findings of fact and conclusions of law. Dkt. #26, #38 and #43. The deadline for joining additional parties was December 2, 2015. Dkt. #26. No additional parties were ever joined. A bench trial in this matter is currently scheduled for May 22, 2017. Dkt. #43. The Court would be required to extensively modify the scheduling order to allow Plaintiff to add new parties, which would essentially require this three-year old case to start over from the beginning.

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether good cause exists to modify a scheduling order rests on whether the party seeking the modification has been diligent. *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Here, the Court finds that Plaintiff has not been diligent in seeking amendment to join new parties. While Plaintiff argues that Defendant is to blame for her failure to join Chase and Deutsche banks, the JSR belies that assertion. Nowhere does Defendant state that Plaintiff was restricted in any way in joining those entities. Moreover, Plaintiff explicitly

stated that she planned to seek discovery as to who owned her loan, and the chain of title of her loan. Dkt. #2-5. Plaintiff recognized as early as November 2, 2015, that those two entities may be necessary Defendants in this action, but she failed to ever present that issue to the Court. She takes no accountability now for her own actions in this matter. Further, Defendant has never asserted that Plaintiff cannot bring her claims because she failed to join Chase and Deutsche banks to this action. *See* Dkts. #56 and #63. Rather, they argue that she reaffirmed the terms of her WaMu loan through a loan modification, as discussed above.

Accordingly, nothing that Plaintiff presents now persuades the Court that Defendant either led her to believe that she could not join additional parties, or caused her to delay almost two years before seeking to join additional parties and amend her complaint. Therefore, the Court denies her motion to join and dismisses this case for the reasons set forth above.

## IV.  CONCLUSION

Having reviewed Defendant's Motion for Summary Judgment, Plaintiff's opposition thereto, and Defendant's Reply in support thereof, along with the remainder of the record, the Court hereby finds and Orders:

1. Plaintiff's Motion to Supplement the Record with untimely argument in opposition to summary judgment (Dkt. #73) is DENIED.

2. Plaintiff's Motion to Join Additional Parties (Dkt. #75) is DENIED.

3. Defendant's Motion for Summary Judgment (Dkt. #56) is GRANTED, and Plaintiff's Complaint is dismissed in its entirety.

4. Defendant's pending Motions In Limine (Dkt. #68) is stricken as MOOT.

5. This matter is now CLOSED.

DATED this 10th day of May, 2017.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 14